393 So.2d 1128 (1981)
The LATT MAXCY CORPORATION and Underwriters Adjusting Company, Appellants,
v.
C.L. MANN, Appellee.
No. TT-65.
District Court of Appeal of Florida, First District.
January 20, 1981.
*1129 Jeffrey A. Cramer of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, for appellants.
Bruce McEwan, Orlando, for appellee.
JOANOS, Judge.
Latt Maxcy Corporation and its carrier, Underwriters Adjusting Company, appeal from a Workers' Compensation Order which awarded the claimant's attorney $12,500 in attorney's fees based upon the achievement of permanent total disability benefits for the claimant. Latt Maxcy concedes that claimant's attorney was successful in securing an increased compensation rate which was not timely accepted and that claimant is entitled to an award of a fee based upon that increased benefit. See Sue Ann's Capri Lounge v. Harhalos, 377 So.2d 989 (Fla. 1st DCA 1979). As to the portion of the attorney's fee award which is based upon the increase in degree of permanency, however, Latt Maxcy argues no award should have been made since it complied with the provisions of Section 440.34(1), Florida Statutes (1977) by accepting the claim for permanent total disability benefits within 21 days of receiving "notice" of the claim. We agree and reverse that part of the order from which the employer appealed.
The central question in this case is, when did "notice" of a claim under Section 440.34(1) occur? The facts are somewhat unusual and complicated, but it is necessary to review them in order to evaluate when and why notice became sufficient in the statutory sense.
On November 22, 1977, claimant, a ranch foreman for Latt Maxcy, fell off of a horse and injured his right hip and shoulder. While claimant was in the hospital, his doctor discovered an aortic aneurysm which required an operation. Claimant did not return to work until April 17, 1978.
Dr. Ames, who had been treating claimant since the accident, found that claimant reached maximum medical improvement from his shoulder and hip injuries on November 6, 1978 and that claimant had a permanent physical impairment of 20% of the body as a whole. The employer did not contest this finding and began making compensation payments based upon the 20% rating. Prior to November 6th, the employer had paid the appropriate temporary disability payments and medical expenses.
On December 7, 1978, claimant, through his attorney, filed a claim asking for compensation above the 20% rating given by Dr. Ames. This claim sought to causally relate the aneurysm to the accident and requested reimbursement for medical expenses connected with the aneurysm. The employer contested this claim, but on June 27, 1979, claimant agreed to a voluntary dismissal "since some of the issues were not *1130 mature at that time." Claimant was still working as ranch foreman for Latt Maxcy both when the claim was filed and when it was dismissed. According to claimant's deposition taken in February of 1979, his post-accident job position and responsibilities were the same as pre-accident. Claimant remained at that job until sometime in July of 1979.
An amended claim which made no attempt to connect claimant's aneurysm to the accident was filed on August 20, 1979. The amended claim alleged that the issues were now "mature" and sought permanent total disability benefits, or, in any event, benefits in excess of the 20% rating. In addition, the claimant requested that treatment be authorized by another physician and that he be interviewed and tested by rehabilitation specialists. Three days after the claim was filed, the employer authorized treatment by Dr. Stanford, as well as an evaluation by a rehabilitation counselor and a rehabilitation group.
On August 27, 1979 the employer and claimant filed a pre-trial stipulation in which the employer listed several defenses to the claim. The employer also sought to depose the claimant, but the deposition had to be delayed until October 17th because claimant's attorney was on vacation from September 5th to October 3rd. After Mr. McEwan returned, the employer asked to have claimant examined by a surgeon at the employer's expense in order to determine whether claimant's complications arising after the aneurysm operation were in any way related to the accident. Mr. McEwan resisted the attempt to examine claimant, deeming it unnecessary.
In the meantime, Dr. Stanford examined claimant on September 5th and 13th, and on October 2nd and 16th. These examinations consisted primarily of conservative treatment and diagnostic work. The doctor scheduled the claimant for an EMG to be taken on October 23rd; after reviewing the EMG findings, on the next day Dr. Stanford prepared a report giving claimant a 35% disability rating. Several days later, the employer also received a rehabilitation evaluation which stated that it would be difficult for claimant to find employment.
On November 1, 1979, the date originally scheduled for the hearing, the employer accepted claimant as permanently and totally disabled. Despite the employer's argument that the claim was timely accepted, the deputy commissioner awarded claimant's attorney $12,500 in fees. The employer contends that its first "notice of the claim" was either when the report of Dr. Stanford giving claimant a 35% disability rating was received or when claimant's deposition was taken on October 17, 1979. The claimant, on the other hand, asserts that the employer had notice of claimant's increased disability when claimant's employment was terminated in July of 1979 or when either the first claim or the amended claim was filed. In addition, the claimant argues that since the employer asserted defenses to the claim in the pre-trial stipulation, it is precluded from relying on the 21 day provision of Section 440.34(1).
On the date of the claimant's injury, Section 440.34(1) provided that "if the employer or carrier ... shall decline to pay a claim on or before the 21st day after they have notice of same, or shall otherwise resist unsuccessfully the payment of compensation ..." then the claimant is allowed an attorney's fee for services provided in the successful prosecution of the claim. Initially, we note that contrary to the claimant's argument, the statute does not prohibit the employer from asserting defenses within 21 days after receiving notice of the claim. Cannon & Sons v. Buchsbaum, IRC Order 2-3849 (1979). The provision of the statute dealing with unsuccessful resistance of payments was not intended to apply to the 21 day period. See, e.g., City of Miami Beach v. Schiffman, 144 So.2d 799 (Fla. 1962).
The claimant's argument that the initial claim operated to start the running of the 21 day period is rejected for two reasons. First, claimant's attorney admitted that the claim was premature when he voluntarily dismissed the claim. If the issues were not "ripe" when the claim was filed, then the employer could not be expected *1131 to make an informed decision on whether or not to accept the claim. Second, unlike the amended claim, the claim filed in December of 1978 sought to make the employer responsible for all medical costs and disabilities resulting from the claimant's aneurysm. Even claimant's attorney later admitted that he could not prove a connection between the accident and the aneurysm: "When I get 4 letters saying it's [the aneurysm] not related I know I'm beat." Section 440.34(1) was enacted in order to expedite payments of benefits by allowing for attorney's fees when an employer unjustifiably resists payment of compensation. Schollenberger v. City of Miami, 241 So.2d 385 (Fla. 1970). Since reluctance by the employer to accept the first claim was justifiable, the employer should not be penalized for its resistance to the claim.
Having resolved that the first claim did not trigger the 21 day provision of Section 440.34(1), we must now determine which of the other dates suggested by the parties operated as notice of a claim. Ordinarily, the 21 day period begins to run when the employer receives notice that a claim (or in this case, the amended claim) has been filed. For example, in Sue Ann's Capri Lounge v. Harhalos, 377 So.2d 989 (Fla. 1st DCA 1979), this Court restated the proposition that even if an employer's refusal to pay compensation forces the employee to file a claim, Section 440.34(1) still allows the employer to avoid payment of attorney's fees by accepting the claim within 21 days of its filing. Carillon Hotel v. Rodriquez, 124 So.2d 3 (Fla. 1960).
The mere filing of a claim will not operate as notice, however, if the claim itself does not contain sufficient information to enable the employer to initiate an investigation. Gulfstar, Inc. v. Gordon, IRC Order 2-3267 (1977); Central Heating & Air Conditioning v. Harrison, IRC Order 2-3242 (1977). This result follows logically from the recognition that during the 21 day period provided by the statute, the employer has both the right and the duty to make a reasonable investigation regarding the validity of the claim. Davis v. Edwin M. Green, Inc., 240 So.2d 4 (Fla. 1970); Thompson v. W.T. Edwards Tuberculosis Hospital, 164 So.2d 13 (Fla. 1964); Smith v. Dixie Packers, Inc., 384 So.2d 709 (Fla. 1st DCA 1980). Under a reasonable interpretation of Section 440.34(1), the right to investigate must be read in conjunction with the statutory requirement that the employer receive "notice" of a claim. Certainly the legislature intended to give employers a 21 day decision-making period which could be used constructively to arrive at an informed decision. In order for the employer's right to investigate to have any substance, the employer must know enough about the claim to be able to independently evaluate its validity. Thus, "notice" of a claim for statutory purposes occurs when the employer first receives sufficient information on which it may begin an investigation.
After receiving the amended claim advising of a possible increase in claimant's disability, Latt Maxcy made every attempt to exercise its right to investigate.[1] The employer responded to the claim almost immediately by authorizing and scheduling appointments for claimant with another physician and with rehabilitation counselors. In addition, Latt Maxcy asked to have claimant examined at the company's expense by a specialist. More importantly, Latt Maxcy sought to depose the claimant but was prevented from taking the deposition within 21 days of the filing of the amended claim because the claimant's attorney left town on an extended vacation. Without a recent deposition of the claimant, the employer could not even be certain of the source of the claimant's physical discomfort. *1132 Such information was particularly important in this case because the claimant had undergone major surgery for a non-work related condition (the aneurysm) after the date of the accident. The employer's right to investigate would have been meaningless in this case if it were not given at least an opportunity to determine whether any increase in the claimant's disability was related to complications arising from the aneurysm operation rather than the accident. A realistic investigation could not proceed without more specific information on the claimant's physical condition, and that information was not received, through no fault of the employer, until October 17, 1979, which was well within 21 days of the employer's acceptance of claimant as permanently totally disabled. Latt Maxcy should not be penalized for its inability to gain that information earlier since the delay was caused solely by the claimant's attorney.
The Order appealed from is reversed and the case is remanded with instructions to award claimant's attorney a fee based upon the attainment of an increased compensation rate and not upon the securing of permanent total disability benefits.
SHAW and WENTWORTH, JJ., concur.
NOTES
[1] Because of Latt Maxcy's numerous efforts to investigate, this case is distinguished from the cases which have held an employer to be liable for attorney's fees because it abdicated the right to investigate and forced the burden of proving liability on the claimant. See Colvin v. State of Florida, D.O.T., 311 So.2d 366 (Fla. 1975); Davis v. Edwin M. Green, Inc., supra; Smith v. Dixie Packers, Inc., supra; Osteen v. Georgia-Pacific Corp., IRC Order 2-3383 (1978).