394 So.2d 1093 (1981)
Vance ROBERTS, Appellant,
v.
GEORGIA-PACIFIC CORPORATION, Self-Insured, Appellee.
No. UU-193.
District Court of Appeal of Florida, First District.
March 10, 1981.
*1094 Thomas W. Davis, Gainesville, for appellant.
Ause Brown, Gainesville, for appellee.
JOANOS, Judge.
The claimant appeals a workers' compensation order in which the deputy commissioner denied an award of attorney's fees but awarded compensation for 25% permanent partial disability ("PPD") to the claimant's thumb. This order is challenged in two respects. First, the claimant argues that he is entitled to an attorney's fee award because the employer did not pay compensation benefits within 21 days of notice of the claim, as required by § 440.34(1) Florida Statutes (1977). Second, the claimant contends that the deputy erred in basing the disability rating on a scheduled injury to the thumb rather than the hand. We agree with both of the claimant's arguments and reverse the deputy's order.
The claimant's work-related accident occurred on July 6, 1977 when a "wood chipper roller" weighing about 800 pounds fell on the claimant's left hand. The nature of the injury is not disputed. Each of the physicians who testified agreed that the primary injury was a crushing of the joint at the base of the thumb. The claimant also fractured the first metacarpal bone (the cylindrical bone of the hand which supports the thumb) and lacerated the thenar eminance (the muscles on the palm side of the hand which move the thumb). These injuries required hospitalization and surgery, which was performed by Dr. Martin. The doctor filed reports describing the injury and the treatments on July 18, 1977 and October 14, 1977. In the last report, Dr. Martin stated that the claimant was discharged as cured on October 3rd and could return to work on October 4th. The report did not give a permanent impairment rating *1095 in the space provided, but sometime after the hearing began the doctor sent an amended report to the deputy which rated claimant as having a 30-40% permanent disability of the left hand.
The employer paid temporary total disability benefits until October 4th but did not commence payment of any permanent benefits. On October 21st, the claimant filed a claim seeking, among other things, a determination of his entitlement to temporary and permanent disability benefits. After receiving no response to the claim by the employer, the claimant's attorney finally arranged for an evaluation of the claimant's hand by Dr. Freed, an orthopedic physician, and the employer was notified on November 17th of the appointment with Dr. Freed. In a report dated December 7, 1977, Dr. Freed stated that in his opinion the claimant had suffered a 25% permanent impairment to the left thumb. On December 19th, the employer began payments based on 25% permanent impairment of the thumb. Later, however, the doctor wrote a note in which he gave the opinion that he anticipated the injury to the web space between the thumb and the index finger would lead to an impairment of the hand.
Due to the conflict between Dr. Martin's and Dr. Freed's ratings, the deputy requested that the claimant's hand be examined by Dr. Carducci, an orthopedic surgeon. The doctor rated claimant as having a 20% permanent impairment of the thumb. Dr. Carducci arrived at this rating by use of orthopedic guides which emphasize loss of motion in the affected area but acknowledged that the claimant had sustained several injuries to the hand.
The claimant argues that attorney's fees should have been awarded because the employer did not timely accept the claim. According to the claimant's analysis, the employer had notice of a claim for permanent disability either when it received the reports filed by Dr. Martin in July and October of 1977 or when the claim was filed on October 21, 1977. In either case the employer's acceptance on December 19, 1977 was well past the 21 day limit provided in § 440.34(1).[1] The employer, on the other hand, argues that permanent disability is a medical fact and that it could not be on notice of any permanency until it was advised of such by a physician. Under this rationale, the employer contends that its first "notice of the claim" occurred when it received Dr. Freed's rating of permanency on December 7, 1977.
The employer in its argument misconceives the purpose of the 21 day provision in § 440.34(1). The 21 day period gives the employer both the right and the duty to investigate the validity of the claim and the burden is on the employer to exercise that right once it receives sufficient information on which it can base an investigation. Davis v. Edwin M. Green, Inc., 240 So.2d 4 (Fla. 1970); Latt Maxcy Corp. v. Mann, 393 So.2d 1128 (Fla. 1st DCA 1980). In this case, the employer was well aware of the nature and severity of the claimant's injury since it received each of the hospital reports filed by Dr. Martin. Although the receipt of these reports did not operate to begin the running of the 21 day period, Sue Ann's Capri Lounge v. Harhalos, 377 So.2d 989 (Fla. 1st DCA 1979), the filing of the claim specifically requesting a permanency determination did initiate the 21 day period and the employer's duty to investigate. As the claimant points out, the employer's investigation of the validity of a permanency claim could have entailed little more than a phone call to Dr. Martin. Instead, the employer chose to abdicate its duty to investigate forcing the claimant's attorney to make arrangements for an evaluation by another physician. By waiting until it received the report from Dr. Freed, the employer placed the burden of investigation on the claimant. "[A]n employer cannot attempt to create a `wall of wilful ignorance' around itself and then `voluntarily' pay benefits when the wall has been breached by *1096 claimant's attorney and thereby avoid payment of a fee to a successful attorney." Colvin v. State, D.O.T., 311 So.2d 366 (Fla. 1975) citing to Davis v. Edwin M. Green, Inc., 240 So.2d 4 (Fla. 1970). See also Smith v. Dixie Packers, Inc., 384 So.2d 709 (Fla. 1st DCA 1980).
The next argument raised by the claimant concerns the validity of the permanent impairment rating to his thumb despite the uncontested recognition of injuries to his hand. The claimant contends that he is entitled to have a rating based upon the injuries he received to the highest (in terms of percentage compensation) scheduled part. This contention is consistent with the theory that when a scheduled injury produces a disability or incapacity in a non-scheduled portion of the body, the claimant should be rated for the body as a whole rather than the legislative prescription for scheduled injuries. Mobley v. Jack & Son Plumbing, 170 So.2d 41 (Fla. 1964). We see no reason why this rule should not be applied to differentiate between the various levels of scheduled injuries.
This case is directly analogous to the circumstances in Jewell v. Wood, 130 So.2d 277 (Fla. 1961) where the court expressly rejected the employer's argument that while the claimant's injury was to be an unscheduled area (the shoulder), it resulted in a disabling effect to a scheduled member (the arm) and should receive a scheduled rating. The court concluded that since the tendon at the shoulder joint was torn, the rating should be based upon that unscheduled injury. The employer in this case is making essentially the same argument that was rejected in Jewell. The evidence has shown conclusively that the claimant received serious injuries to his hand and despite the fact that the hand injuries had primary impact on the thumb, the rating should have been given for the highest scheduled member which was impaired. Incidentally, we note that it would be an unusual occurrence if an injury to the hand did not result in some disablement to one of the digits of the hand.
REVERSED AND REMANDED for reconsideration consistent with this opinion.
ERVIN and BOOTH, JJ., concur.
NOTES
[1] That section, as it read on the date of the claimant's accident, provided that an employer is liable for attorney's fee when the employer "shall decline to pay a claim on or before the 21st day after they have notice of same ..."