451 So.2d 908 (1984)
NATIONAL AIRLINES, INC., Employer, and Travelers Insurance Company, Carrier, Appellants,
v.
James H. WIKLE, Employee, and Division of Workers' Compensation, Appellees.
No. AO-470.
District Court of Appeal of Florida, First District.
June 1, 1984.
Rehearing Denied July 17, 1984.
H. George Kagan of Miller, Hodges & Kagan, Miami, for appellants.
Joseph C. Segor, Miami, for appellee.
ZEHMER, Judge.
The employer and carrier appeal the deputy commissioner's order separately assessing two fees for the services of claimant's attorney under section 440.34, Florida Statutes (1977). The first fee, $2,154, was awarded on the ground that the employer and carrier did not timely pay, within twenty-one days after notice, claimant's claim for permanent partial disability benefits. The second fee, $5,642, was awarded on the ground that the carrier unsuccessfully resisted the payment of compensation by pursuing, in claimant's circuit court damages suit against a third party involving the same accidental injury, its claim of lien for *909 benefits paid and to be paid.[1] We affirm the first fee and reverse the second.
Two bones in claimant's leg were badly fractured in December 1977 when a fellow employee of National Airlines ran into him while operating a small motor vehicle called a "tug." The carrier accepted the injury as compensable and provided appropriate benefits, in a timely fashion, down to the point of this controversy. Sometime in 1980, claimant reached maximum medical improvement and was entitled to permanent partial disability benefits under chapter 440. The benefits paid included medical and hospitalization costs for an open reduction and internal fixation of the tibia, with bone grafting, and for surgical removal of the plate in January 1980. The carrier also paid temporary total disability benefits intermittently when National Airlines was not paying claimant his regular salary either for actual work or pursuant to National's policy of continuing the salaries of injured workers. Temporary total disability benefits were last paid in April 1979. After the fixation plate was removed, claimant returned to work on January 30, 1980, and the carrier was so advised. As far as this record shows, claimant has worked since then without interruption on account of his injury.
The deputy predicated the first fee awarded, $2,154, on a finding that the carrier did not timely begin payment of permanent disability benefits "within twenty-one (21) days after the Claimant reached maximum medical improvement." The deputy was undoubtedly relying upon section 440.34(1), Florida Statutes (1977), which states:
If the employer or carrier ... shall decline to pay a claim on or before the 21st day after they have notice of same ... and the claimant shall have employed an attorney at law in the successful prosecution of the claim, there shall, in addition to the award for compensation, be awarded a reasonable attorney's fee... .
The only claim form actually filed in this case is of little consequence in our review of the award. The claim form itself is not a part of this record, but it is characterized in the record without objection as being of the "shotgun" variety, which we interpret as meaning that it claimed, in general terms, permanent disability benefits along with various other benefits. Moreover, that claim form was filed sometime in 1978, two years before claimant conceivably became entitled to the permanent disability benefits which the carrier began paying July 28, 1980, retroactively to June 7, 1980.
Nor is there an issue here of whether, in the language of section 440.34(1), "claimant ... employed an attorney at law in the successful prosecution of the claim." Appellants do not here argue that, as a predicate for a fee award under the 1977 statute, claimant must show that his claim for permanent disability benefits unpaid for twenty-one days after "notice" was thereafter "successfully prosecuted" or paid in consequence of claimant's employment of an attorney. See, City of Miami Beach v. Schiffman, 144 So.2d 799, 803-804 (Fla. 1962); Paul Smith Construction Co. v. Florida Industrial Commission, 93 So.2d 735 (Fla. 1957); Sue Ann's Capri Lounge v. Harhalos, 377 So.2d 989 (Fla. 1st DCA 1979), cert. denied, 386 So.2d 637 (Fla. 1980). We intimate no view on that question.
The question here is simply whether the carrier's commencement of 40% permanent partial disability benefits on July 28, 1980, was more than twenty-one days late. That is to be determined not by reference to the 1978 filing of a form which no one argues claimed permanent disability benefits contemporaneously thought to be due, but by reference to some subsequent notice or event of which the carrier had or should have had knowledge, indicating that the claim was then considered mature. See, Massey v. North American Biologicals, 397 So.2d 341, 343 (Fla. 1st DCA 1981); Latt Maxcy Corp. v. Mann, 393 So.2d 1128, 1131 (Fla. 1st DCA 1981); Roberts v. Georgia-Pacific Corp., 394 So.2d 1093 (Fla. 1st DCA 1981). In Latt Maxcy Corp. v. *910 Mann, supra, the purpose of the twenty-one day period was described in the following language:
The mere filing of a claim will not operate as notice, however, if the claim itself does not contain sufficient information to enable the employer to initiate an investigation. Gulfstar, Inc. v. Gordon, IRC Order 2-3267 (1977); Central Heating & Air Conditioning v. Harrison, IRC Order 2-3242 (1977). This result follows logically from the recognition that during the 21 day period provided by the statute, the employer has both the right and the duty to make a reasonable investigation regarding the validity of the claim. Davis v. Edwin M. Green, Inc., 240 So.2d 4 (Fla. 1970); Thompson v. W.T. Edwards Tuberculosis Hospital, 164 So.2d 13 (Fla. 1964); Smith v. Dixie Packers, Inc., 384 So.2d 709, 1980 FLW 1067 (Fla. 1st DCA 1980). Under a reasonable interpretation of Section 440.34(1), the right to investigate must be read in conjunction with the statutory requirement that the employer receive "notice" of a claim. Certainly the legislature intended to give employers a 21 day decision-making period which could be used constructively to arrive at an informed decision. In order for the employer's right to investigate to have any substance, the employer must know enough about the claim to be able to independently evaluate its validity. Thus, `notice' of a claim for statutory purposes occurs when the employer first receives sufficient information on which it may begin an investigation.
393 So.2d at 1131. The critical consideration is, therefore, to be centered on evidence showing when the employer had sufficient knowledge to begin its investigation.
The twenty-one day period cannot, under the deputy's findings, have commenced running adversely to the carrier upon the carrier's actual receipt of Dr. Nadler's written report that claimant had recovered to a condition of "approximately 35-40% of this extremity." That report, dated June 6, 1980, and based upon the doctor's examination of claimant on that date, was not received by the carrier until July 24, and the carrier's payments began four days later.
The deputy appears to have considered that the twenty-one day period began running no later than June 6, 1980, the date on which Dr. Nadler examined claimant, determined that he had reached maximum medical improvement, estimated his permanent disability rating, and, we assume, prepared his report bearing that date. Dr. Nadler's examination of claimant that day resulted from the carrier's May 21 letter to the doctor, which, after briefly reciting the claimant's surgical history and the fact that claimant "returned to work for National Airlines, Inc. on January 30, 1980 in the same capacity as a servicer in the aircraft service department," made the following request:
I would appreciate it if you would drop me a note regarding in your medical opinion whether Mr. Wikle has reached so called maximum medical improvement, and if so, if you could estimate the amount of permanent partial disability Mr. Wikle will suffer from his injury of 12/22/77, to his right leg. (Emphasis added.)
In respect to these circumstances, the deputy found:
Travelers' failure to timely pay the permanent partial disability compensation was, at best, the result of a communication problem between it and Dr. Nadler and does not excuse Travelers' responsibility to institute payment of the permanent partial disability compensation within twenty-one (21) days after the Claimant reached maximum medical improvement.
Since there is competent evidence to support this finding, and since the deputy did not erroneously apply the wrong rule of law, we affirm the award of this fee. Without visiting on the carrier or the claimant any obligation toward clairvoyance, the statute limits the carrier's right to delay payment of permanent benefits under a pending claim, premature but never dismissed, to precisely twenty-one days after *911 it is perfected by actual or imputed notice of facts (overtly determined in some discoverable fashion) which could, by due diligence, have been discovered. On May 21, the carrier had knowledge of sufficient information to conclude that claimant's "shotgun" claim for permanent partial disability benefits had matured to the point that further investigation thereof was necessary. This is shown by its letter requesting Dr. Nadler to "estimate the amount of permanent disability" which now exists, not whether any permanent disability exists. As a consequence of this investigative effort, Dr. Nadler determined on June 6, 1980, that claimant had reached maximum medical improvement, suffering a 35% to 40% permanent disability of his extremity, and he prepared his report based on this determination. Although the carrier's date stamp undisputedly shows receipt of that report on July 24, 1980, the carrier must nevertheless bear the responsibility for this delay in receipt of information prepared well within the twenty-one day period in response to its appropriate inquiry, at least insofar as the determination of the right to attorney's fees. This physician had been approved by the carrier to treat the claimant and requested by it to estimate the extent of claimant's permanent disability. The consequent breakdown in communication resulted in part from the carrier's failure to follow through on its request, and responsibility for such breakdown is, therefore, fairly and properly placed on the carrier rather than the claimant.
The Supreme Court decision in Lehigh Portland Cement Co. v. Branch, 319 So.2d 13 (Fla. 1975), appears to be closely on point, but it is not. In that case, the Court expressly found that there was no proof that the physician determined the extent of disability on the date of examination rather than six weeks later when the report was prepared and transmitted to the carrier (Id., at 14, n. 1). That absence of proof is a materially distinguishing fact from this case, where the proof supported a finding that the disability was determined at the time of examination.
We hold, therefore, that the carrier had sufficient knowledge of the maturity of claimant's claim for permanent injury at least by May 21 to commence the running of the twenty-one day period and, thus, affirm the award of the first fee.
The deputy's stated basis for awarding the second fee, assessed at $5,642, is that claimant's attorney "obtained a benefit" to claimant by negotiations leading to Travelers' waiver of its claim of lien on account of workers' compensation benefits paid and to be paid, which the carrier had previously filed in claimant's circuit court damage suit against the third party. National, which appeared or was joined as the individual defendant's employer and indemnitor, eventually paid claimant $165,000 in settlement of that suit.
The deputy's order recites that "Travelers had not intended as of the time that the trial started to voluntarily give up its right of recovery and had not given up its right until it was requested by Claimant's counsel as part of the third party settlement." When claimant and National, in order to settle the damage suit, induced Travelers to waive its lien on the settlement proceeds, claimant of course received more net recovery after payment of his lawyer's $66,000 contingent fee. Had Travelers not waived its subrogation rights, the deputy estimated, a recovery or jury verdict of some $22,000 more than the settlement amount would have been necessary to produce, net to claimant, the same recovery. For this additional benefit to claimant, the deputy reasoned, an additional fee of $5,462 was payable by Travelers to claimant's attorney.
Though the deputy's order is devoid of citations to authority for this award, claimant defends the award as having been made under section 440.34(1), Florida Statutes (1977), for the carrier's having "unsuccessfully resist[ed] the payment of compensation." This view of the statute, however, is inconsistent with pertinent appellate decisions.
*912 Whatever may be a claimant's chapter 440 entitlement to attorney's fees for defeating a carrier's motion to modify a circuit court's equitable distribution order and successfully defending against the carrier's subsequent appeal, Ohio Casualty Group v. Parrish, 350 So.2d 466, 469-70 (Fla. 1977), nothing in section 440.34(1) can be read as deterring a carrier from filing a legitimate statutory claim of lien in a pending third-party damage suit pursuant to section 440.39, Florida Statutes (1977), let alone as penalizing the carrier for waiving part or all of that lien as part of a settlement by which the employer avoids further potential liability as an indemnitor. Claimant correctly points out, in response to Travelers' arguments, that decisions doubting the circuit court's power to award a fee in ordinary equitable distribution proceedings are beside the point. Compare, Orange County v. Sealy, 412 So.2d 25 (Fla. 5th DCA 1982); State, Dept. of Health and Rehabilitative Services v. Culmer, 402 So.2d 1273 (Fla. 3d DCA 1981), and Edmondson v. Swope, 395 So.2d 553 (Fla. 5th DCA 1981), with Kight v. Capeletti Bros., 384 So.2d 1302, 1303 (Fla. 4th DCA 1980) (a fee conceded). For the reasons discussed below, we decline to extend Parrish further than it requires, certainly not to the circumstances here; and claimant has offered no other pertinent authority.
Section 440.34, Florida Statutes (1977), the statutory authority for awarding attorney's fees, provides in relevant part:
(1) If the employer or carrier shall file notice of controversy as provided in s. 440.20, shall decline to pay a claim on or before the 21st day after they have notice of same, or shall otherwise resist unsuccessfully the payment of compensation, and the claimant shall have employed an attorney at law in the successful prosecution of the claim, there shall, in addition to the award for compensation, be awarded a reasonable attorney's fee of 25% of the first $5,000 of the amount of the benefits secured, 20% of the next $5,000 of the amount of the benefits secured, and 15% of the remaining amount of the benefits secured, to be approved by the judge of industrial claims, which fee may be paid direct to the attorney for the claimant in a lump sum.
* * * * * *
(3) If any proceedings are had for review of any claim, award, or compensation order before any court, the court may allow or increase the attorney's fees, in its discretion, which fees shall be in addition to the compensation paid the claimant and shall be paid as the court may direct.
In Ohio Casualty Group v. Parrish, supra, the carrier moved the circuit court to modify an equitable distribution order based upon a subsequent change in the workers' compensation statute. That court ruled it lacked jurisdiction over the subject matter because the previous equitable distribution order had been affirmed on appeal. The district court of appeal affirmed the ruling on this jurisdictional point and ordered the carrier to pay the claimant an attorney's fee for the services of his attorney in the appellate court. The Supreme Court granted certiorari and quashed the district court's opinion on the jurisdictional issue, but affirmed the appellate court's attorney's fee award. Construing the language of section 440.34, Florida Statutes (1975), which is substantially similar to that quoted above from the 1977 version of that section, the opinion states:
The statute specifically authorizes an award of attorney's fees if the employer or carrier "shall otherwise resist unsuccessfully the payment of compensation." By filing a motion to modify the equitable distribution order, petitioner was essentially resisting payment of compensation by attempting to both deprive respondent of prospective payments and recover half of all benefits paid after October 1, 1974. The language of Section 440.34, Florida Statutes (1975), articulates the policy that the claimant should not be required to pay his own legal fees in attempting to retain past benefits paid or future benefits already determined to *913 be forthcoming. Furthermore, the proceedings in the district court involved review of the equitable distribution award.
350 So.2d at 470.
Parrish did not reach the question of authorizing a deputy commissioner to award a fee to claimant's attorney for successfully negotiating the carrier's waiver of its lien for equitable distribution in the circuit court proceeding. Parrish must be read as approving the award of attorney's fees to a successful claimant for appellate review of the trial court's order declining to modify the equitable distribution previously ordered and, in light of the Supreme Court's later decision in Caravasios v. M.W. Spates Construction Co., 441 So.2d 1070 (Fla. 1984), nothing more.
In Caravasios, the insured claimant suffered a compensable injury in 1975 and recovered a substantial verdict against the third-party tort feasor in an action in circuit court. The workers' compensation carrier moved for its statutory share pursuant to a notice of lien filed under section 440.39(3)(a), Florida Statutes (1975), and was awarded 50% of all monies it had paid, including penalties and interest, and 50% of future benefits to be paid. The claimant's request for attorney's fees for successfully resisting part of the lien in circuit court was denied. The district court of appeal affirmed the denial of attorney's fees for services in the circuit court, but reversed that portion awarding the carrier reimbursement for penalties and interest and granted claimant's counsel an appellate fee under the authority of Ohio Casualty Group v. Parrish, supra. The Supreme Court, reviewing the district court's decision, again construed the language of section 440.34, Florida Statutes (1975), stating:
The plain language of the statute provides for an award of attorney's fees in two, and only two, situations: (1) In an original proceeding to compel carrier to render benefits due on a valid claim, the judge of industrial claims has power to award attorney's fees. (2) If any appeal is taken from a claim, award or compensation order, the appellate court may grant attorney's fees in connection with that appeal. The rule of statutory construction inclusio unius est exclusio alterius clearly demonstrates that the award of attorney's fees is not authorized for trial proceedings such as the one now before us.
The case law on this point is consistent with the plain language of the statute. In State ex rel. Hartford Accident & Indemnity Co. v. Johnson, 118 So.2d 223 (Fla. 1959), this Court construed a virtually identical predecessor to this statute as allowing awards of attorney's fees only for proceedings before the Industrial Commission or for appellate proceedings seeking review of a claim, award or compensation order. Johnson had brought an original proceeding in circuit court seeking a rule nisi directing the carrier to show cause why the award made by the Industrial Commission should not be paid. Because the proceeding was original in the circuit court, not appellate, Johnson was not entitled to recover attorney's fees.
Nor is Ohio Casualty Group v. Parrish in any way contradictory of this construction of the statute. There the carrier sought to review an existing equitable distribution order to modify it to conform with a new version of the workers' compensation law. Such review is expressly contemplated as triggering the potential award of attorney's fees.

In Universal Engineering Corp. v. Cartier [380 So.2d 1160 (Fla. 3d DCA 1980)] the Third District Court of Appeal correctly summarized the statute and case law: "Thus, only a judge of industrial claims may award attorney's fees in an original proceeding. A court may award a fee only where it reviews a claim." (Emphasis in original.)
There is no question that Caravasios is entitled to recover attorney's fees for the appeal of the equitable distribution order. It is equally clear that, under the statute, she is not entitled to attorney's *914 fees for the original proceedings in the trial court.
441 So.2d at 1071-72.
The Supreme Court's decisions make it abundantly clear that the statutory language of section 440.34 authorizes an award of attorney's fees only in the two situations described. We do not view the services of claimant's attorney in negotiating the carrier's waiver of lien filed in the circuit court action as services involved "in an original proceeding to compel carrier to render benefits due on a valid claim." Caravasios, 441 So.2d at 1071. That claim of lien was not before the deputy commissioner "in an original proceeding to compel carrier to render benefits due on a valid claim," Id., but was pending in an original proceeding filed in circuit court against the third party tort feasor and National as indemnitor to recover damages, a portion of which the carrier had a statutory right to receive. The deputy commissioner did not have jurisdiction to apportion those damages between the claimant and the carrier; that matter was solely within the province of the court. The claimant's attorney received a contingent fee of $66,000 for his services in obtaining claimant's recovery as a result of that circuit court action. His services in obtaining the waiver of lien were necessarily incident to complete settlement of the circuit court action and were not incurred in a proceeding for benefits pending before the deputy commissioner. Since Caravasios unequivocally holds that, "under the statute," claimant "is not entitled to attorney's fees for the original proceedings in the trial court," 441 So.2d at 1072, we do not believe the statute can reasonably be construed as authorizing claimant to nevertheless perfect such a right by circuitously filing a claim therefor with the deputy commissioner.
Accordingly, that portion of the deputy's order awarding a second attorney's fee for the services of claimant's attorney in negotiating a waiver of the carrier's lien is reversed.
AFFIRMED in part and REVERSED in part.
SMITH and WENTWORTH, JJ., concur.
NOTES
[1] § 440.39, Fla. Stat. (1977).