KAHN, Judge.
In this workers’ compensation case, we have for review an order awarding attorneys’ fee pursuant to section 440.34(3)(b), Florida Statutes (1991). This statute allows the claimant to recover fees from the employer “[i]n any case in which the employer or carrier fails or refuses to pay a claim filed with the division ... on or before the 21st day after receiving notice of the claim-” We reverse because the claim was premature when filed, and the employer and carrier (E/C) accepted claimant as permanently and totally disabled within 21 days from the date they received actual notice that claimant had reached maximum medical improvement (MMI) from all conditions.
Claimant suffered a compensable industrial injury in February 1991, and the carrier shortly thereafter commenced voluntary payments of indemnity benefits. The E/C subsequently received notice that, according to one authorized treating physician, claimant had reached MMI from an anatomic stand *899 point as of April 8, 1993, with a 14% permanent impairment (PI) rating and, according to another physician, she had reached MMI on July 16,1993, with an 11% PI rating. On September 14,1993, claimant filed a claim for benefits seeking, among other things, permanent total disability (PTD) and supplemental benefits, as well as authorization for treatment by a psychiatrist, Dr. Kenneth Director. The E/C filed a notice of denial asserting that the claim for PTD benefits was premature in that claimant had not yet reached MMI from a psychiatric viewpoint. The E/C nonetheless authorized Dr. Director to treat the claimant for any psychiatric problems associated with the industrial injury-
claimant remained under Dr. Director’s care from November 5,1993, until December 5, 1994, which was apparently her last visit with the physician. On January 19,1995, Dr. Director notified the E/C by telephone that claimant had reached MMI as of December 5, 1994. The doctor confirmed this by a letter of January 22, 1995. On February 9, 1995, the E/C commenced payment of PTD benefits and also paid benefits retroactive to December 5,1994.
Claimant subsequently sought payment of attorney’s fees pursuant to section 440.34(3)(b). Despite the E/C’s payment within 21 days of notice from Dr. Director, the JCC awarded fees under that section. The JCC found the “operative date” to be December 22, 1994, a date on which a representative of the E/C telephoned Dr. Director’s office. According to the JCC, “Dr. Director’s testimony is ... clear that had he been asked, he would have been able to give this maximum medical improvement information [the December 5, 1994 date] as early as December 22, 1994.” The JCC found fault with the E/C’s failure to ask questions on December 22 concerning psychiatric MMI. The JCC further found that the September 14, 1993, claim matured and ripened in December 1994, and that more than 21 days elapsed from December 22, 1994, the E/C’s “first opportunity to inquire about the claimant’s psychiatric maximum medical improvement date,” until benefits were paid on February 9, 1995. Accordingly, reasoned the JCC, claimant was entitled to attorneys fees under the 21-day rule.
The JCC erroneously focused upon what she perceived as the E/C’s bad-faith failure to investigate adequately the PTD claim. Bad faith attorneys’ fees existed in workers’ compensation cases under section 440.34(3)(b), Florida Statutes (1987), but were repealed in favor of the 21-day fee rule in 1989. Ch. 89-289, § 19, Laws of Florida. The present industrial injury occurred in 1991 and is therefore subject to the this rule of section 440.34(3)(b), Florida Statutes (1991). This rule requires that the carrier have actual notice of the claim to trigger the 21 days. Gunter v. Sauer, Inc., 629 So.2d 1086 (Fla. 1st DCA 1994); see also, Ralston v. Circle K, 659 So.2d 1380 (Fla. 1st DCA 1995); National Distrib. Co. v. Campbell, 632 So.2d 647, 649 (Fla. 1st DCA 1994) (21 days begins to run from actual notice of a claim).
In this case, the JCC erroneously reincarnated bad faith attorneys’ fees under the guise of the employer’s continuing obligation to place needed benefits speedily in the hands of the injured worker. Certainly the employer is under an obligation to provide needed benefits without delay. Also, the E/C is obligated to investigate upon receipt of a claim. That is a primary reason for the 21-day rule. Here, timely investigation of the September 14, 1993, claim revealed the premature nature of the claim. Under the 1989 amendments, attorneys’ fees are not available as a penalty for the employer’s failure to pay benefits before the expiration of 21 days after actual notice of a claim. Instead, the workers’ compensation law provides penalties for compensation unpaid within 14 days after becoming due. § 440.20(7), Fla. Stat. (1989). The JCC had no authority to reimpose the bad faith attorneys’ fee penalty when the Legislature saw fit to delete it in 1989.
We recognize that the fee statute we construe was patterned after former section 440.34(1), Florida Statutes, deleted in 1979. That statute, created in 1941, contained language similar to section 440.34(3)(b), Florida Statutes (1991), and provided that “[i]f the employer or carrier ... shall decline to pay a claim on or before the 21st day after they *900 have notice of same, or shall otherwise resist unsuccessfully the payment of compensation, and the claimant shall have employed an attorney at law in the successful prosecution of the claim, there shall ... be awarded a reasonable attorney’s fee-” § 440.34(1), Fla. Stat. (1977).
Our construction of the 1991 statute is strongly influenced by Lehigh Portland Cement Co. v. Branch, 319 So.2d 13 (Fla.1975), a case involving the former 21-day rule. In that case, claimant’s treating physician examined claimant on June 13, 1973, and concluded that further treatment was unwarranted. Id. at 14. The physician delayed, however, until July 27, a decision and report on the appropriate disability rating, at which time he notified the employer. Id. Within 21 days after July 27, the employer voluntarily commenced payment of permanent disability benefits based upon the physician’s report. The judge of industrial claims denied attorneys’ fees, but the Industrial Relations Commission reversed holding that the employer failed to provide benefits within 21 days of the physician’s examination. The Florida Supreme Court reversed the Commission because “[sjection 440.34(1) unambiguously states that the 21-day period begins to run from the date on which the employer and carrier ‘have notice of (a claim)’.” Id.
Applying the Lehigh Portland decision to the present case, it is clear that Dr. Director made no determination as to MMI until January 19, 1995. Much of the claimant’s questioning of Dr. Director focused upon the issue of whether on December 22, 1994, Dr. Director would have given the carrier an MMI date of December 5,1994, had he been asked. Dr. Director answered that such a response would have been possible and that the actual MMI date he came up with was “probably generated around [January 22, 1995],” which is the date he wrote the MMI letter to the carrier. Dr. Director also testified that “at the end of December” he “probably would have been able to give an MMI date.” Finally, he stated that if a specific inquiry had been made by the carrier as of December 22, 1994, he probably would have been able to give an MMI date.
A comparison between Lehigh Portland Cement v. Branch and this court’s later decision in National Airlines, Inc. v. Wikle, 451 So.2d 908 (Fla. 1st DCA 1984), demonstrates that Lehigh Portland controls the present issue. In Wikle, the doctor examined the claimant on June 6, 1980, and on that date determined claimant had reached MMI, estimated claimant’s permanent disability rating, and prepared a report bearing that date. 451 So.2d at 910. For whatever reason, however, the carrier did not receive the report until July 24, 1980. The opinion in Wikle indicates that as of May 21, 1980, some two weeks before the doctor determined MMI, the carrier had knowledge of sufficient information to conclude that the claim for permanent disability benefits had matured to the point that further investigation was necessary. Id. at 911. The carrier did not pay until after receipt of the medical report on July 24, 1980, and the judge awarded attorneys’ fees, affirmed by this court. The Wikle opinion expressly distinguishes the Lehigh Portland decision:
In that case, the Court expressly found that there was no proof that the physician determined the extent of disability on the date of examination rather than six weeks later when the report was prepared and transmitted to the carrier. That absence of proof is a materially distinguishing fact from this case, where the proof supported a finding that the disability was determined at the time of examination.
Id. (citation omitted). In the present case, as in Lehigh Portland, the physician made no determination of MMI until several weeks after the December 5 examination and, in the present case, as in Lehigh Portland, the E/C promptly paid permanent benefits after receipt of the report. In Wikle, the court noted that the pending claim was perfected by imputed notice of facts “overtly determined in some discoverable fashion.” Id. Because no determination of MMI was made in the present ease in any fashion by December 22, the JCC erred in using that date as the operative date for attorneys’ fees.
REVERSED.
*901 BENTON, J., concurs
ERVIN, J., dissents with written opinion.