ERVIN, Judge,
dissenting.
In my judgment, the majority’s decision requiring actual notice of a claim as a precondition to an award of fees under section 440.34(3)(b), Florida Statutes (1991), is a substantial departure from prior case law which recognized that notice of a claim for statutory purposes occurs once an employer has sufficient information to begin investigating the status of its employee’s condition. In support of its position that section 440.34(3)(b) requires nothing less than actual notice of the claimant’s maximum medical improvement (MMI) condition, the majority cites three cases from this court: Ralston v. Circle K, 659 So.2d 1380 (Fla. 1st DCA 1995); National Distributing Co. v. Campbell, 632 So.2d 647 (Fla. 1st DCA 1994); and Gunter v. Sauer, Inc., 629 So.2d 1086 (Fla. 1st DCA 1994). All of these opinions are, however, factually distinguishable from the case at bar. In both Gunter and National Distributing Co., we properly held that the 21-day period runs from the date the claim is filed, rather than from the date of the E/C’s receipt of the claim acknowledged by the Division of Workers’ Compensation. In Ralston, we appropriately decided that because the 21-day period could not commence before the claim was filed, the E/C’s receipt of a copy of the claim before the claimant had filed it did not trigger the operation of the 21-day rule.
None of the above decisions addressed the facts and issue now before us, involving a situation where a claim for permanent disability benefits was premature when it was filed, because a date of MMI had not yet been established for the employee’s psychological condition,[1] but later became mature once psychiatric MMI was confirmed. Moreover, this issue has never been decided in any ease interpreting section 440.34(3)(b), since its adoption by the 1989 legislature.
Nevertheless, abundant case law exists construing former section 440.34(1), Florida Statutes, after which section 440.34(3)(b) was patterned. The rule is clearly established that a ease or cases interpreting an earlier statute may be controlling in subsequent eases as to the construction of another statute, if an examination reveals that for all practical purposes the statutes are identical. 49 Fla. Jur.2d Statutes § 168 (1984). These earlier cases never imposed, contrary to the interpretation that the majority now places on the statute, the requirement of nothing less than an employer’s actual notice of a claim’s subsequent maturity as a prerequisite to the running of the statutory 21-day term, if the employer had cause to reasonably believe that an investigation was needed to determine the current status of the employee’s condition. In other words, the construction formerly given section 440.34(1) was that the notice must be such as to apprise the employer of “some subsequent notice or event of which the carrier had or should have had knowledge, indicating that the claim was then considered mature.” National Airlines, Inc. v. Wikle, 451 So.2d 908, 909 (Fla. 1st DCA 1984) (emphasis added). The facts in Wikle are particularly instructive in regard to the issue at bar.
Wikle filed a premature “shotgun” claim in 1978 for, among other things, permanent disability benefits (PDB). The claim matured in 1980, and the E/C voluntarily began paying PDB on July 28, 1980. One of the questions before the court was whether the E/C’s payment of such benefits occurred more than 21 days after the requisite statutory notice for the payment of attorney’s fees. In affirming the judge’s award of fees, this court rejected the carrier’s argument that it had timely paid the claim within four days after it received actual notice of the claim’s maturity, i.e., its receipt (on July 24,1980) of a treating physician’s report,’ dated June 6, 1980, which informed it that claimant had recovered to a condition of 35 to 40 percent permanent disability of his injured right leg. In deciding that June 6, 1980, was the operative date for the commencement of the 21-day period, and that more than 21 days had elapsed thereafter before the claimed benefits were paid, we *902 pointed out that on May 21, 1980, the E/C had sent a letter to an examining physician inquiring whether claimant had yet reached MMI, and, if so, directing him to estimate the amount of claimant’s permanent partial disability. Thus, although the record in Wilde revealed that the carrier had timely paid PDB after it received actual notice of claimant’s MMI status and permanent disability rating, this court nonetheless affirmed the judge’s order granting fees on the theory that the carrier had sufficient information as of May 21, 1980, on which to conclude that the formerly unmatured claim had ripened “to the point that further investigation thereof was necessary.” Id. at 911.
We specifically noted that it was immaterial to the issue of claimant’s right to attorney’s fees that the carrier’s receipt stamp on the physician’s report bore the date of July 24, 1980, and that it paid the claim four days thereafter. We explained:
This physician had been approved by the carrier to treat the claimant and requested by it to estimate the extent of claimant’s permanent disability. The consequent breakdown in communication resulted in part from the carrier’s failure to follow through on its request, and responsibility for such breakdown is, therefore, fairly and properly placed on the carrier rather than the claimant.

Id.

The majority, however, states that the outcome in the case at bar is controlled not by Wilde but rather by the decision of the Florida Supreme Court in Lehigh Portland Cement Co. v. Branch, 319 So.2d 13 (Fla.1975). I cannot agree. As the Wikle court noted, nothing in the record in Lehigh Portland disclosed that the employer had actual notice of claimant’s disability status before July 27, 1973, the date the physician’s report was forwarded to it, after which the E/C timely made payment. Nor was there anything in the record which would have reasonably apprised the employer — as in both the case at bar and in Wilde — to begin an investigation of claimant’s condition at any time before the E/C’s actual receipt of the report.
In the case at bar, the majority is of the opinion that, as in Lehigh Portland, the facts disclose that the authorized physician made no determination of the MMI date until the time notice of same was given the E/C, and that the E/C paid the claimed benefits within 21 days after it had obtained such notice. Although the record is clear that payment was timely made after the carrier’s receipt of the physician’s report, it is inconceivable to me that the Wilde decision does not control the outcome of the present ease, thereby requiring the award of the attorney fee pursuant to the dictates of the statute.
The rule announced in Wilde was part of the natural progression of case law which had recognized that notice, sufficient to activate the running of the 21-day period, begins when the carrier has in its possession adequate information on which to launch an investigation regarding whether a claim, immature when filed, may have thereafter ripened into maturity. See Davis v. Edwin M. Green, Inc., 240 So.2d 4 (Fla.1970); Thompson v. W.T. Edwards Tuberculosis Hosp., 164 So.2d 13 (Fla.1964); Massey v. North Am. Biologicals, 397 So.2d 341 (Fla. 1st DCA 1981); Roberts v. Georgia-Pacific Corp., 394 So.2d 1093 (Fla. 1st DCA 1981); Lott Maxcy Corp. v. Mann, 393 So.2d 1128 (Fla. 1st DCA 1981).
For example, in Davis, after the employer had voluntarily paid benefits based on a determination that claimant had suffered a 23 percent disability, claimant sought additional benefits and twice set hearings to establish the requested increase. The employer canceled both hearings. Finally, a third hearing was scheduled, at which time the E/C’s physician testified that claimant was 100 percent disabled. Based on this testimony, the employer shortly thereafter commenced payments. In rejecting the E/C’s argument that it was not liable for fees under the statute, the Florida Supreme Court made the following pertinent observations:
An employer who does not exercise his [or her] right to investigate, and who forces the burden of proving liability on the claimant to the extent the claimant requires assistance of an attorney for depositions or other actions, is not protected from payment of attorneys’ fees by igno- *903 ranee resulting from failure to investigate liability.
Davis, 240 So.2d at 5. The court further observed:
The Florida Workmen’s Compensation Law does not contemplate that an employer may insulate itself from knowledge that benefits may be due to a claimant and then, when its wall of willful ignorance is breached by claimant’s attorney, commence “voluntary” payments and resist payment of attorneys’ fees.

Id.

The court in Lehigh Portland obviously was aware of the above quoted material in noting that there was no evidence that the E/C had “insulated itself from information available” on the date of claimant’s examination. Lehigh Portland, 319 So.2d at 14 n. 1. Unlike the facts in Lehigh Portland, the judge below could have reasonably concluded that the carrier, when it called Dr. Director’s office on December 22,1994, either had insulated itself from information which it could have then readily discovered by making the appropriate inquiries, or that it had negligently failed to investigate matters which a reasonable investigation required. Such a conclusion is amply supported by the facts of this case.
The record shows that the carrier, aware of its duty to monitor claimant’s psychiatric MMI status, had in fact commenced an investigation of same by making no less than 12 contacts with the physician before its call of December 22, 1994. While claimant remained a patient of Dr. Director, the E/C and its representatives made a total of 16 contacts to Dr. Director and members of his staff, the twelfth of which occurred on June 10, 1994, when an employee in the office of the E/C’s claims adjuster conferred with a psychologist concerning the claimant’s MMI and work status. In its next communication with Dr. Director’s office on December 22, 1994, more than 13 months after the employee had first been placed under the care of Dr. Director, and nearly four years after her compensable accident, the E/C’s agent failed to ask any questions regarding such status. Thereafter, the first such inquiry concerning same occurred on January 19, 1995, during a telephone conversation between Dr. Director and counsel for the E/C.
Thus, during a six-month interval, the E/C made no contacts whatsoever with the authorized treating physician or any of his staff regarding claimant’s psychiatric status. Nor did it make any inquiry for over seven months concerning whether claimant had yet attained psychiatric MMI, notwithstanding the E/C’s prior knowledge that the employee had previously achieved MMI from her physical injuries, and its earlier inquiry regarding the current state of claimant’s psychiatric condition. As a consequence, the E/C utterly failed for over seven months in its duty to conduct an adequate investigation regarding the essential question of whether claimant had the capacity to work, despite the fact that the only remaining issues involving the PTD claim were whether claimant had achieved MMI from a psychiatric perspective, and, if so, the extent of her permanent impairment, if any.
The evidence in the case at bar is identical to that in Wikle, because an inquiry had been made in both cases concerning claimant’s current MMI status — in Wikle on May 21, 1980, and in the case on review on June 10, 1994. This type of communication was held sufficient in Wikle to place the employer on reasonable notice to begin an investigation. The facts are dissimilar insofar as the carrier below received a negative response immediately after the question was raised, whereas, in Wikle, the subsequent examination of June 6, 1980, revealed a positive finding of MMI with a resulting permanent partial disability. I cannot believe, however, that if the examination of Wikle had failed to disclose his achievement of MMI — as occurred in the present case following the E/C’s query of June 10, 1994 — the employer’s duty to conduct a reasonable investigation regarding such status would have been discharged. The clear import of Wikle and the cases it relied on demonstrates that the E/C’s burden of investigation remains, and it is not satisfied until the question of a claimant’s entitlement to permanent benefits is finally resolved.
Considering the circumstances of this case, I conclude that the workers’ compensation *904 act placed a clear obligation on the E/C to conduct an adequate, continuing investigation of claimant’s current medical or employment status, once the employer had before it information disclosing that claimant might then or soon thereafter be at MMI and entitled to permanent disability benefits. Accordingly, once the E/C undertook to contact the authorized physician’s office on December 22, 1994, after more than six months had elapsed since its June 10,1994, inquiry as to whether claimant had reached MMI from her psychiatric condition, the law, in my judgment, imposed upon it the burden of inquiring about claimant’s current condition. This inquiry should, at the minimum, have been directed to such issues as whether claimant then required further remedial care for her psychiatric disease, or whether she had reached the point of MMI, with or without any PI. The E/C, however, defaulted in its duty to reasonably investigate, and it must, therefore, bear the consequences of its breach. Wikle.
This conclusion is supported by Dr. Director’s testimony that had the E/C specifically asked him about claimant’s psychiatric MMI status during the contact of December 22, 1994, he probably would have then been able to state the MMI date, which he later confirmed in his letter of January 22, 1995. He explained that at claimant’s last office visit on December 5, 1994, she had failed to make any substantial progress since her hospitalization for a mental disorder; thus, it was his opinion that she had reached MMI sometime following her release. He therefore used the date of December 5, 1994, for MMI, because it was the first time he had seen claimant following her psychiatric evaluation.
If the majority’s decision is understood to say that nothing less than the employer’s actual notice of a claimant’s current condition is sufficient to trigger the running of the 21-day period, then it is in clear conflict with Wikle and other cases holding that notice begins when the E/C receives adequate information to commence an investigation. In that the majority has not expressly receded from Wikle and the cited cases espousing the above rule, I assume the majority’s holding can be alternatively interpreted as meaning that the information the employer received regarding the probable maturity of the claim before its call of December 22, 1994, was not sufficient to require it to begin an investigation of such status. The JCC, however, who served as trier of the facts, found that such information was sufficient. The weight and sufficiency of the evidence has traditionally been determined by the fact-finder. As we have long recognized:
We do not review whether there was competent, substantial evidence to support the claim ...; we only review whether the record contains competent, substantial evidence to support the deputy’s order.
Swanigan v. Dobbs House, 442 So.2d 1026, 1027 (Fla. 1st DCA 1983). And, to restate one of the most elementary standards of appellate review: we do not substitute our judgment for that of the JCC on factual issues that are supported by competent, substantial evidence.
In the case at bar, the JCC heard and examined the evidence and decided from its cumulative weight that the E/C, as of December 22, 1994, had sufficient notice of the maturity of the claim for PTD benefits to commence the running of the 21-day period. She did not, as the majority contends, erroneously reincarnate bad faith attorney’s fees, but instead clearly based the award upon a finding of notice under the 21-day rule. As I firmly believe her decision was supported by competent, substantial evidence, I would affirm the award of the fee.

. Ordinarily, a claimant must have reached MMI as to all conditions caused by the compensable injury to be entitled to permanent indemnity benefits. Copeland Steel v. Miles, 536 So.2d 1179 (Fla. 1st DCA 1989).