487 So.2d 1169 (1986)
HERB'S EXXON and Peninsular Fire Insurance Company, Appellants,
v.
John R. WHATMOUGH, Appellee.
No. BG-418.
District Court of Appeal of Florida, First District.
April 29, 1986.
Walter E. Beisler, of Beisler & Beisler, West Palm Beach, for appellants.
John C. Randolph, of Johnston, Sasser, Randolph & Weaver, West Palm Beach, for appellee.
WIGGINTON, Judge.
Before us is an appeal from a workers' compensation order wherein the deputy commissioner found that claimant had suffered two accidents, and that claimant's left iliac artery occlusion was causally related to the compensable accident of November 28, 1980. Accordingly, the deputy ordered the employer/carrier to pay or reimburse claimant for all medical bills incurred for the treatment of the occlusion by Dr. Alpert and related medical providers. We affirm.
On December 30, 1980, claimant filed a notice of injury showing the date of accident as being either November 28 or November 29, 1980, and describing the accident as follows: "It had to happen when lifting cases of oil, or tires  had to move some cases in order to take inventory on 11/29/80 plus prior times." (Emphasis supplied). Claimant described the injury as "pain in L1 area of back, after on my feet for a period of time my left leg gives out from under me." He filed his claim on February 12, 1981, indicating the date of accident as being November 29, 1980, and the cause of injury as the lifting of cases of oil and tires while taking inventory. Again, claimant described the injury as involving the lower area of his back, with his left leg giving out from under him after his having been on his feet for a period of time. On the basis of the notice of injury and claim, the employer/carrier voluntarily paid compensation and medical benefits.
In June 1983, approximately two and one-half years following the claimed accident, claimant underwent arterial bypass surgery. The final diagnosis revealed that claimant had been suffering from an occluded left iliac artery which had caused the dysfunction of his left leg. Dr. Alpert, *1170 the physician who performed the surgery, later opined that the occlusion resulted from an alleged fall at work on November 28, 1980, of which claimant had informed Dr. Alpert when he was relating to him all of the circumstances leading to the onset of his pain on November 29, 1980. The carrier, still paying compensation benefits and providing medical care for the back injury described in the notice of injury and original claim for compensation, controverted the medical care for the occluded iliac artery on the basis that the condition was "unrelated to the accident of 11-28-80". (Emphasis supplied).
At the hearing before the deputy commissioner, claimant's attorney argued that the employer/carrier had been on notice of claimant's left leg problems from the beginning through the notice of injury and the initial claim, the subsequent history given to Dr. Alpert of claimant's fall and blow to his back, and Dr. Alpert's relating of the occlusion to that event. In contrast, the employer/carrier essentially took the position that claimant's story of the fall was unbelievable. Their attorney pointed out that claimant had failed to mention a fall during his first deposition taken in February 1981 and "suddenly" related a "new history" of a fourteen-foot fall from a ladder to his treating physicians in 1982 and 1983. The employer/carrier were finding it "impossible to believe" that until June 1983 all of claimant's treating physicians "would overlook an occlusion of the iliac artery and that suddenly that problem would be diagnosed and it would relate all the way back to November 28th of 1980." The deputy found that claimant had suffered two compensable accidents  the fall of approximately twelve feet from a ladder on November 28, 1980, that did not immediately produce any specific physical complaints but which caused the occlusion, and an incident on November 29, 1980, when claimant injured his back while lifting a case of oil.
In response to the deputy's finding of two accidents, the employer/carrier filed a motion for rehearing, raising a statute of limitations defense under section 440.19, Florida Statutes (Supp. 1980). Employer/carrier pointed out that claimant had filed only one claim for benefits; that in his deposition taken February 25, 1981, claimant had claimed injury by accident from only one incident, the lifting of a case of oil; that no claim was ever filed alleging multiple accidents. Employer/carrier argued that the statute of limitations had run as to the alleged November 28, 1980, accident since no benefits were paid as a result of the fall from the ladder and no claims for benefits were made prior to the discovery of the occlusion of the left iliac artery in June of 1983. The motion for rehearing was summarily denied.
On appeal the employer/carrier raise two issues: (1) whether there is competent and substantial evidence to support the deputy's conclusion that claimant sustained two accidents, and (2) whether the statute of limitations would bar an award of benefits for the November 28, 1980, accident.
Clearly, issue one is affirmable. Claimant's testimony and the medical evidence support the deputy's conclusion of a second accident resulting in the occluded artery. Cf. Winter Park Memorial Hospital v. Brown, 452 So.2d 116 (Fla. 1st DCA 1984).
Issue two merits further discussion. Section 440.19(2)(b), Florida Statutes (Supp. 1980), provides:
All rights for remedial attention under this section shall be barred unless a claim therefor which meets the requirements of paragraph (d) is filed with the division within 2 years after the time of injury, except that, if payment of compensation has been made or remedial attention has been furnished by the employer without an award on account of such injury, a claim may be filed within 2 years after the date of the last payment of compensation or within 2 years after the date of the last remedial attention furnished by the employer... .
In the instant case, the employer/carrier voluntarily paid compensation and medical benefits based on a notice of injury and *1171 claim describing an injury to claimant's back with left leg dysfunction as a consequence of lifting cases of oil or tires while taking inventory. Those payments were predicated on the treatment claimant received for lower back pain. While the medical reports indicated an awareness of claimant's left leg weakness, no independent significance was accorded that condition by the authorized physicians.
In January, 1982, while being examined by Dr. Ford, an employer/carrier authorized physician, for the first time claimant related a history of an eleven- or twelve- foot fall onto boxes at the employer's business on November 28, 1980. During that visit, claimant again complained of pain in the left lower extremity, with his left lower extremity "going out on him." On October 3, 1982, for the second time, claimant described the fall during a visit to Dr. Brimfield, another authorized physician, during which he explained that he suffered no specific pain from the fall until the following day when the pain manifested itself in his back. Despite this new history of a fall, however, neither physician, in his reports to the employer/carrier, related claimant's left lower extremity weakness to any injury other than the back injury possibly arising from the twisting and lifting incident. The occlusion was not discovered until June 1983 resulting in the surgery for which claimant now seeks payment.
Further, not until July 1, 1983, well beyond two years from the November 28, 1980, accident, was claimant conclusively diagnosed as suffering from an occluded left iliac artery. Dr. Alpert, the unauthorized treating physician at the time, was similarly given a history by claimant of a fall from a ladder, and informed the carrier and its attorneys on August 2, 1983, that claimant's condition was "secondary to dissection" of the artery, and fit "historically with his history of trauma back in November 28, 1980." Although Dr. Alpert also opined in a second letter to the attorneys that claimant's problem was secondary to repetitive lifting of heavy materials, he later explained on deposition that he added that opinion simply because it was part of the overall history that claimant had given him. Dr. Alpert maintained that the fall could have led to the dissection and occlusion of the artery but was not so willing to opine that repetitive lifting would have caused the occlusion. His opinion was shared by an independent physician appointed by the deputy to resolve conflict in the medical evidence. Thus, the evidence indicates that claimant reasonably could not have recognized the nature, seriousness, and probable compensable character of his arterial injury until June 1983 at the earliest.
In Escarra v. Winn Dixie Stores, Inc., 131 So.2d 483 (Fla. 1961), the supreme court affirmed the deputy commissioner's excusal of the claimant's failure to comply with the statutory provisions regarding notice of injury based on the deputy's finding that the claimant attached no particular significance to his injury since it was slight and caused no immediate disability. Under those circumstances, the supreme court concluded that "neither the claimant nor any reasonable person would have any way of knowing that the type of injury involved here would in the course of time become troublesome and would require medical treatment." Id. at 485. The court recognized that its holding was in harmony with the "general rule" and with its "`reasonable man'" test regarding the giving of notice as set forth in Tomberlin v. City of Miami, 117 So.2d 735 (Fla. 1960).[1]See also Riddle v. Brevard County Board of Public Instruction, 286 So.2d 557 (Fla. 1973); and City of Tampa v. Tingler, 397 So.2d 315 (Fla. 1st DCA 1981).
Although Escarra was concerned with the notice of injury, the supreme court therein and in Riddle cited to Larson's Workmen's Compensation Law, section *1172 78.41, to buttress further its opinion. That section applies also to statutory provisions regarding the limitations to filing of claims and states that "the time for notice or claim does not begin to run until the claimant, as a reasonable man, should recognize the nature, seriousness and probable compensable character of his injury or disease."[2] The supreme court explained in Escarra that "[r]ecognition of the `probable compensable character' of an injury or disease would, of course, require that a claimant, as a reasonable person, have knowledge of facts which would indicate to him that a physical impairment was causally related to a previous minor accident." 131 So.2d at 485. Under the facts and circumstances of the instant case, we find it incredible that claimant would have had sufficient knowledge of the occluded artery prior to 1983 to file a claim based thereon. As we noted earlier, claimant experienced no symptoms immediately following his fall and he did not experience any pain until he twisted his back the next day. Further, a reasonable reading of the record would show that claimant could not have realized a causal relationship between the fall and the occlusion until June or July, 1983, when claimant's condition was ultimately diagnosed by Dr. Alpert. As Professor Larson notes, "[a] claimant should be expected to display no greater diagnostic skills than any other uninformed layman confronted with the early symptoms of a progressive condition." Larson, Section 78.41(d).
The employer/carrier complain, as they did on rehearing before the deputy, that, in effect, the deputy established a new accident resulting from a fall from a ladder for which no previous benefits had been paid and for which no claim had been filed, four and one-half years after the date of the alleged accident. They contend that filing a claim is essential to trigger the right of the employee to any compensation or remedial treatment that the employer does not voluntarily provide, citing A.B. Taft & Sons v. Clark, 110 So.2d 428 (Fla. 1st DCA 1959).
In Car Stop Unlimited v. Salmon, 404 So.2d 172 (Fla. 1st DCA 1981), it was held that although a claim did not specifically allege that claimant was seeking wage-loss benefits for a specified period of time, since the notice of hearing did refer to such benefits, the claim was properly before the deputy. Indeed, in Brockman v. Dade Division-American Hospital Supply, 389 So.2d 344 (Fla. 1st DCA 1980), we held that where the evidence in a workers' compensation case included testimony of claimant's preexisting condition and the effect of her subsequent compensable injury, the employer was on notice of the extent of the claim and the deputy's consideration of merger and possible increased rating thereby was not precluded simply because there was no explicit claim for merger.
We further recognized in DiMuro v. Dave's Tile Service, Inc., 409 So.2d 107 (Fla. 1st DCA 1982), that notice of a workers' compensation claim occurs when an employer first receives sufficient information upon which to begin an investigation. Although DiMuro involved the propriety of an attorney fee award, it was held that the carrier, upon receipt of notice, is charged with an affirmative duty to conduct a reasonable investigation regarding the validity of the claim. In that case, the letter from the unauthorized physician advising that claimant has suffered permanent partial disability of his leg was considered the equivalent of a claim. See also Latt Maxcy *1173 Corporation v. Mann, 393 So.2d 1128 (Fla. 1st DCA 1981).
In the case at bar, on January 24, 1984, after receiving the report of Dr. Alpert during the summer of 1983, advising of the causal connection, the carrier prepared its notice to controvert "medical indemnity benefits caused by or related to the left iliac artery occlusion" and gave as its reason for controverting that the condition was "unrelated to the accident of 11-27-80." (Emphasis supplied). At that time the carrier was specifically aware that the falling incident occurred on November 28, 1980. Additionally, the notice of hearing dated June 19, 1984, stated as a subject of the hearing "whether unpaid medical bills are related to the initial accident." The record reflects a stipulation that "notice of accident and notice of hearing were timely given to the proper parties." Among the exhibits offered without objection was Dr. Alpert's deposition of October 19, 1984, again relating the falling incident as the probable cause of claimant's injury and the October 18, 1984, deposition of claimant, which also related the falling incident. At the hearing, the deputy stated that the employer/carrier took the position that the claimant's artery occlusion was not causally related to the November 28, 1980, accident and therefore they owed no benefits relating to such occlusion.
A close review of the arguments of counsel made during the final hearing of the claim before the deputy discloses that no contention was made by the employer/carrier's attorney that he was not placed on notice of the two accidents as was made later in his motion for rehearing. The record shows that claimant's attorney related that the injury may have been caused by the fall from the ladder. The employer/carrier's attorney conceded that the carrier received notice during June of 1983 of the trauma to claimant's artery and advanced as the carrier's defense that claimant's and the attending doctor's testimony were so unbelievable that it would be incredible to believe that the occlusion of the artery "would relate all the way back to November 28, 1980." The thrust of the defense was that claimant's arterial condition was caused by nonindustrial accidents and not by either the lifting or falling incidents.
We find the record shows conclusively, even in the absence of any explicit formal amendment to the claim, that the issue of the causal relationship between the occluded left artery and the trauma was tried by the consent of the parties. We are not prepared to place any higher standard for pleading in the area of workers' compensation than exists in civil practice. Florida Rule of Civil Procedure 1.190(b) explicitly recognizes that "(w)hen issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."
Although we find no exact counterpart to the above rule in the workers' compensation rules, we conclude that the informal self-executing procedure for processing a workers' compensation claim would also permit the parties to try by consent an issue not explicitly alleged in a claim so long as all parties were placed on fair notice of the issue. Such, in fact, happened in Brown v. Southern Chemicals, Inc., 274 So.2d 529 (Fla. 1973), wherein a workers' compensation claim alleging an incorrect date of injury was allowed to be corrected at the time of the hearing based upon consent of the parties. As we recognized in A.B. Taft & Sons v. Clark, at 433:
(T)he Workmen's Compensation Law is so administered that formal pleadings ... are quite unnecessary in order to activate the question of an employee's right to compensation and other benefits under the Act, and... any paper lodged with the commission indicating a probability that the employee has not received such compensation or benefits is treated as a "claim" and processed as such in the same manner as if it were filed with all the niceties of expert legal attention.
As this court observed in Car Stop Unlimited v. Salmon, the sequence of events "does not show that the procedures here in *1174 question prevented any fair opportunity for action by appellant [carrier] and the Division toward which the provisions of the law and the rules are directed." 404 So.2d at 173. In the absence of a demonstration of prejudice to the carrier and in light of all of the considerations discussed herein, the deputy's award of medical benefits is AFFIRMED.
ERVIN, J., and McCORD, GUYTE P., Jr. (Ret.), Associate Judge, concur.
NOTES
[1] Under the supreme court's holding in Tomberlin, the test of whether a failure to give notice can be excused is "`whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances... .'"
[2] Larson also notes in section 78.41(b) that the usual statute, as is true with section 440.19,

merely dates the period from the time of injury, disability, or accident, saying nothing about time of discovery of the nature of the condition. Yet the great majority of the courts have been sufficiently impressed with the acute unfairness of a literal application of this language to read in an implied condition suspending the running of the statute until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained.
In that same section, Larson also recognizes the significance of statutory language dating the period from the time of the "injury" rather than the "accident," the former language. being amenable to interpretation under the more "humane rule." Section 440.19 uses the injury as the starting point of the limitations period.