689 So.2d 1255 (1997)
FLORIDA HOSPITAL and Sedgwick James of Florida, Appellants,
v.
William P. WILLIAMS, Appellee.
No. 96-1173.
District Court of Appeal of Florida, First District.
March 19, 1997.
Michael D. Rouse and Pamela J. Cox of Cox & Rouse, P.A., Orlando, for Appellants.
Paul C. Perkins, Jr., Winter Park and Bill McCabe of Shepherd, McCabe & Cooley, Longwood, for Appellee.
KAHN, Judge.
The employer/carrier (E/C) appeal from a final workers' compensation order awarding benefits based on the "reasonable person" exception to the two-year statute of limitations found in section 440.19, Florida Statutes (1991). Appellants contend that the reasonable person exception is not applicable to the instant case. We agree and reverse the order.
Claimant William P. Williams suffered a dorsiflexion injury to the right wrist in an industrial accident on March 12, 1991. Consequently, in the fall of 1991, he underwent a surgical procedure in which a bone graft harvested from his left hip was used to fuse his right wrist. Dr. Lionel Foncea, who performed the wrist fusion, indicated that a "good size bone graft from the hip" was harvested. Dr. Foncea continued to treat claimant until December 17, 1991. During follow-up visits, claimant complained of hip pain and a resultant limp. At his last visit, claimant indicated that his wrist felt good but he was "still having some discomfort over the hip area." Dr. Foncea recommended additional treatment and scheduled a follow-up *1256 appointment in six weeks. Claimant, however, failed to show up for appointments on January 18, 1992, February 11, 1992, and June 8, 1992. Dr. Foncea retroactively placed claimant at maximum medical improvement effective December 17, 1991 with a 19% permanent impairment to the body as a whole.
Claimant also sought treatment at the Florida Hospital Employee Health Clinic (EHC) for hip and wrist pain following the wrist fusion. He went there on December 11, 1991 and June 3, 1992. On both of these visits, EHC referred claimant back to Dr. Foncea for follow-up treatment. On a hospital report for the December 11, 1991 visit, claimant listed March 12, 1991 as the date of the incident and described "having constant pain" in his hip following surgery. Claimant's last authorized medical treatment for the March 12, 1991 industrial accident was the June 3, 1992 EHC visit. Williams next sought treatment for his hip in March of 1995 from his family doctor, Dr. Jose Lopez.
At his deposition Williams testified that he always had pain in his hip "from day one" and it "got progressively worse." He testified at the hearing that he had hip pain immediately after the surgery, and that the "pain" he was referring to in the deposition was "periodic stiffness due to weather changes," which occurred a "couple of times a month." He indicated that he began to have a distinct and more severe pain in the hip in March of 1995.
After seeking treatment with Dr. Lopez in March of 1995, claimant began treatment with orthopedist, Dr. Hugh Morris, on April 10, 1995 through his health insurance. X-rays showed some heterotopic bone, which is extra bone formation, in the general area of the hip graft. Dr. Morris did not know whether this heterotopic growth was causally related to the bone graft because pain and stiffness from a heterotopic growth usually occurs during the first six to nine months after surgery. Dr. Morris, did allow that the growth could have been caused by the original graft. Dr. Foncea described the heterotopic bone formation as a long-term complication from the bone graft, which is seldom seen.
The E/C argued below, and on appeal, that because more than two years passed without medical care furnished by the employer, the right to further compensation is barred by the terms of section 440.19. The judge of compensation claims (JCC) disagreed with the statute of limitations defense. The JCC relied on the holdings in Herb's Exxon v. Whatmough, 487 So.2d 1169 (Fla. 1st DCA 1986) and Paulk v. Berkeley Florist Supply, 574 So.2d 238 (Fla. 1st DCA 1991), which state that the section 440.19 limitations period for filing a claim does not begin to run until the claimant, as a reasonable man, should recognize the nature, seriousness and probable compensable character of his injury or disease. The JCC found that because the heterotopic bone growth was asymptomatic until March 1995, a reasonable man, and specifically the claimant, could not have recognized the nature, seriousness and compensable character of the injury until March 1995.
We first note that the statute of limitations contained in section 440.19 contains no reasonableness exception for unforeseen medical problems which arise after a two-year gap in treatment. Although the case law has developed such an exception, the instant case is beyond its rather narrow scope.
The exception was originally developed to excuse a claimant's failure to give notice within 30 days after injury where a reasonable person would not be aware of his injuries within the notice period. In Escarra v. Winn Dixie Stores, Inc., 131 So.2d 483, 485 (Fla.1961), the supreme court, citing 2 Larson, Workmen's Compensation Law, Sec. 78.41, noted that "the time for notice or claim does not begin to run until the claimant, as a reasonable man, should recognize the nature, seriousness and probable compensable character of his injury or disease." The court explained that
Recognition of the `probable compensable character' of an injury or disease would, of course, require that a claimant as a reasonable person have knowledge of facts which would indicate to him that a physical impairment *1257 was causally related to a previous minor accident.
131 So.2d at 485. In Escarra, the claimant was a bag boy who had a bloody nose for 10 minutes after a case of beer fell on him. He "thought no more about it" until several months later when he discovered his breathing difficulties stemmed from the accident. See also Hester v. Westchester General Hospital, 260 So.2d 505 (Fla.1972)(scrub technician in operating room injured her back lifting patients from operating tables to stretchers and "did not think anything of it" until she had a flare-up several months later); Slater v. UPS, 507 So.2d 1146 (Fla. 1st DCA 1987), rev. dismissed, 518 So.2d 1278 (1987)(extremely busy holiday deliveries which initially appeared to produce only aching pain in left calf found four months later to have caused a herniated disc). In Overholser Construction Company v. Porter, 173 So.2d 697, 700 (Fla.1964), this court limited the Escarra "reasonable person" test, stating:

Escarra represents the outer limits of leniency that should be extended in such situations. There the initial injury was slight. At this point the apparent analogy to the instant case ends. In Escarra the occurrence caused no immediate disability. It was apparently of such minor consequence that the employee `thought no more of it' until he consulted a physician several months later, after he developed some difficulty in breathing. It was there held that a reasonable person would not under such circumstances be alerted to the responsibility of giving notice of an injury which he had no reason to suspect existed.
In Riddle v. Brevard County Board of Public Instruction, 286 So.2d 557, 561 (Fla.1973), the court also noted that under Escarra, the strict 30-day-notice requirement may be excused if a claimant is reasonably unaware that his injury was causally related to a "minor industrial accident" and if he, once aware of the causal relationship, prosecutes the claim with due diligence.
Although this court has applied the reasonable person exception to the statute of limitations, the scope of the exception continues to be limited. See Whatmough (fall 12 feet from a ladder did not immediately produce any specific physical complaints but caused an occluded artery which was not discovered to be causally related until 2½ years later); Paulk v. Berkeley Florist Supply (blow to head resulting in no apparent immediate problems, but followed much later by hand and arm symptoms).
Here, claimant had major surgery in which a "good size bone graft [was harvested] from the hip." Dr. Foncea described the surgery as a "big operation." Claimant knew of his surgery and bone graft from the hip. He experienced pain and limping for some time after the surgery and had several follow up appointments.
We recognize that Williams may not have foreseen the exact complication that later developed. He was, nonetheless, cognizant of the surgery and ensuing hip pain. In Mahoney v. Sears, Roebuck & Co., 438 So.2d 174 (Fla. 1st DCA 1983), rev. denied, 447 So.2d 887 (Fla.1984), this court held that a claimant must "go through the form of receiving medical care every two years in order to preserve the right to future benefits." The court noted that the requirement of receiving medical care at least every two years "exalt[s] form over substance, particularly where the result is to deprive the worker of needed medical care." Id. We are bound, as was the court in Mahoney, by the statute. The "reasonable person" exception does not cover long term complications of a known serious injury or compensable procedure, after the two-year statute of limitations has expired.
REVERSED.
DAVIS and BENTON, JJ., concur.